**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

STEVEN A. MUELLER,             )
                                             )
          Movant,              )
                                             )
       v.                      )          No. 4:13-CV-312 CAS
                                             )
UNITED STATES OF AMERICA,  )
                                             )
          Respondent.     )

## MEMORANDUM AND ORDER

This matter is before the Court on federal prisoner Steven A. Mueller's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence ("Motion to Vacate"). The government filed its response, and movant filed a traverse. Also before the Court is movant's motion for leave to amend his Motion to Vacate, which the government opposes.[1] For the following reasons, movant's motion for leave to amend and Motion to Vacate are denied.

### *I.  Factual Background*

This case arises from a murder that took place in October 1992 of Danny Coleman. Karen and Danny Coleman were married in January 1973. Mr. Coleman had a life insurance policy through his employment, and a credit life insurance policy which, in the event of his death, would

---

[1]In his memorandum in support of his Motion to Vacate movant asks for an evidentiary hearing. He also filed a separate motion for an evidentiary hearing. Movant, however, does not adequately explain in any of his filings why a hearing is necessary in this case, such as specifically identifying disputed evidence in the record or an issue requiring a credibility determination. The Court will deny movant's motion for an evidentiary hearing. "A § 2255 motion 'can be dismissed without a hearing if (1) the [movant]'s allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003) (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)).

pay off the mortgage on his home. Karen Coleman was the beneficiary on both life insurance policies, the value of which exceeded $25,000.00.

Sometime around 1990, Karen Coleman told her long-time friend Michelle Nolan that she wanted to kill her husband, Danny Coleman. Ms. Nolan directed Ms. Coleman to speak with her husband Larry Nolan, who was a convicted criminal imprisoned in the state penitentiary. Karen Coleman and Michelle Nolan visited Larry Nolan in prison. Mr. Nolan asked Ms. Coleman about the amount of life insurance Mr. Coleman had, and he agreed to have Mr. Coleman killed in exchange for part of the life insurance proceeds.

James Kornhardt was Mr. Nolan's close friend and a fireman with the Mehlville Fire District in Saint Louis County, Missouri. Mr. Nolan arranged for Ms. Coleman and Mr. Kornhardt to meet and discuss killing Mr. Coleman. Ms. Coleman met Mr. Kornhardt in Forest Park, and she gave him $2,000. They discussed the murder, and Ms. Coleman agreed to pay $15,000 to Mr. Kornhardt and an unspecified amount to Mr. Nolan to kill her husband.

Mr. Kornhardt enlisted movant's help to kill Mr. Coleman. Mr. Kornhardt told movant that he would receive some money for helping with the murder. On October 22, 1992, movant, Mr. Kornhardt and another individual, "Dozer," beat Mr. Coleman to death in Michelle Nolan's brother's house in south Saint Louis City. Danny Coleman's body was transported to a field in Franklin County, Missouri, and his body was ultimately found in a truck that had been set on fire. The autopsy showed that Mr. Coleman had been beaten to death. Also, portions of the body were missing, including a large part of his chest and skull. The investigator on the scene performed a search of the area, and an opened but lightly used box of kitchen matches was found near the truck. Fingerprints were found on the cellophane wrapper of the matchbox. At the time, the police were

unable to match the fingerprints to anyone. The police investigation into Mr. Coleman's death eventually went cold.

After Danny Coleman's death, Karen Coleman received approximately $150,000 in life insurance proceeds. The first payment she received was on October 6, 1993, and her final payment was received on July 15, 1997. On Larry Nolan's advice, Karen Coleman withdrew sums of cash in increments of $5,000 at a time, to be provided to Mr. Kornhardt as payment. Karen Coleman recalled meeting movant in October 1994, in a K-Mart parking lot in south St. Louis County to deliver the money in small denominations.

In 1999, an inmate, Michael Kempker, disclosed information about Mr. Coleman's death to law enforcement. Mr. Kempker was friends with Mr. Nolan, who died in 1997. Based on the information from Mr. Kempker, law enforcement questioned Mr. Kornhardt. They eventually matched his fingerprint to one that had been found on the box of matches. Mr. Kornhardt and Ms. Coleman were indicted for Mr. Coleman's murder.

While Mr. Kornhardt was in jail, he called his wife, Dianne, and instructed her to have movant at home on the evening of December 19, 2008. Mr. Kornhardt called that evening and gave movant instructions to dispose of evidence relating to the murder-for-hire of Danny Coleman. Mr. Kornhardt had movant remove a gun that was hidden in the basement fireplace. He also instructed movant to go to the garage and dispose of a gun, silencer, and ammunition that movant had hidden there. This telephone conversation was recorded and reviewed by law enforcement. After removing the items in the garage, movant made a comment to Mrs. Kornhardt that he "couldn't believe Jim kept this shit all these years." Movant told Mrs. Kornhardt that he was going to throw the items in the river, which he did.

After listening to the recording, an agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives questioned movant about the items he removed from the house and garage and about Mr. Coleman's death. Movant admitted to the agent that he had disposed of a silencer, gun, and ammunition. Movant told the agent various stories about what had happened on the day that Mr. Coleman was killed, including one account of the murder where three men beat Mr. Coleman with bats and fighting sticks and then shot him three times. Movant showed the agent where Mr. Coleman was killed and walked him through the crime scene while explaining what happened. Movant admitted to the agent that he shot Mr. Coleman and had received $1,000 to $1,200 for his role in the murder. Movant ultimately testified to a grand jury that he had removed the silencer and gun from the house and garage after the phone conversation with Mr. Kornhardt.

## II. Procedural History

On December 11, 2008, a federal grand jury sitting in St. Louis returned an indictment against Karen Coleman and Mr. Kornhardt charging them with conspiracy to commit murder-for-hire (Count I) and murder-for-hire (Count II), both in violation of Title 18 U.S.C. § 1958. On April 30, 2009, the grand jury returned a superseding indictment against movant, Karen Coleman, and James Kornhardt. A second superseding indictment was returned by the grand jury on June 25, 2009. In Count I, movant, Karen Coleman, and James Kornhardt were charged with conspiracy to commit murder-for-hire. In Count II, all three were charged with murder-for-hire. Count III charged Mr. Kornhardt with Obstruction of Justice, in violation of Title 18 U.S.C. § 1512(b)(2)(B). Count IV charged Mr. Kornhardt with Mail Fraud in violation of Title 18 U.S.C. §§ 1341 and 1342. Finally, Count V asserted forfeiture allegations against Mr. Kornhardt. Attorney Steven Stenger was appointed by the Court to represent movant.

Counsel for defendants filed a number of pretrial motions. Movant's counsel filed a motion to sever the defendants; to suppress movant's statements; for disclosure of favorable, exculpatory, and impeaching evidence; to produce notes from law enforcement authorities; for a bill of particulars; and to strike surplusage from the indictment. Movant's counsel also filed three motions to dismiss the indictment based on arguments that the indictment did not state an offense, it did not allege actual use of an interstate facility, and that it was barred by the statute of limitations. A hearing were held before the Honorable Magistrate Judge David D. Noce on November 3, 2009. Magistrate Judge Noce issued his Reports and Recommendations on December 30, 2009, and January 6, 2010. Movant's counsel filed objections and a motion for reconsideration. The undersigned overruled movant's objections and sustained, adopted, and incorporated the Reports and Recommendations of the Magistrate Judge.

On May 24, 2010, movant's counsel filed a motion for an order requiring movant to undergo a psychiatric or psychological examination in order to determine whether movant was competent to understand the nature and consequences of the proceedings against him and to assist properly in his defense. The Court granted movant's motion and ordered that movant be seen by a psychologist or psychiatrist. Movant was to arrange for the examination, following consultation with the government as to the examiner. Movant was seen by Jeffrey S. Kline, Ph.D., on May 31, 2010. Dr. Kline concluded movant did not suffer from a mental disease or defect rendering him mentally incompetent to strand trial or to properly assist in his own defense. Movant's counsel objected to the report and moved that movant be seen by another examiner. A hearing was held on June 3, 2010, at which movant was present. Movant was found competent to stand trial, and the Court denied movant's motion for a second examination.

Karen Coleman entered a plea of guilty on June 3, 2010. On August 31, 2010, she was sentenced to twenty years of incarceration in the Bureau of Prisons and five years of supervised release. Movant and Mr. Kornhardt elected to proceed to trial. Prior to trial, movant's counsel filed several motions in limine, including motions to exclude evidence of prior bad acts, hearsay statements of Larry Nolan and Alfred Kempker, jail house recordings, reference to lie detector tests, and speculative testimony from the fire investigative report.

Movant and James Kornhardt were tried together on June 7, 2010. After a six-day jury trial, movant was convicted of murder-for-hire and conspiracy to commit murder-for-hire (Counts I and II).

Movant appeared before the undersigned for sentencing on September 23, 2010. The Court sentenced movant to a term of imprisonment of Life on Counts I and II, all terms to be served concurrently.

Movant appealed his conviction and sentence to the Eighth Circuit Court of Appeals. Movant raised seven arguments on appeal:

> (1) the trial court erred in denying his motion to dismiss the murder-for-hire charge and the related conspiracy charge because they were barred by the statute of limitations; (2) his motion for severance was improperly denied; (3) the second superseding indictment failed to state an offense; (4) the prosecutor's remarks during closing arguments constituted prosecutorial misconduct; (5) the trial court erred in finding him competent to stand trial; (6) his due process right to a competency hearing was violated; and (7) there was insufficient evidence to support the jury's verdict.

United States v. Mueller, 661 F.3d 338, 343 (8th Cir. 2011).

On November 11, 2011, the Eighth Circuit affirmed the judgment of this Court, with the appellate court's mandate issuing on December 22, 2011. Movant filed a petition for certiorari with the United States Supreme Court, which was denied on April 16, 2012.

On February 19, 2013, movant filed the instant motion for post-conviction relief pursuant

to 28 U.S.C. § 2255. In his Motion to Vacate, movant asserts the following grounds for relief:

> Ground One: Movant was denied his Sixth Amendment right to effective assistance
> of counsel in that his trial counsel "did not order the required competency hearing,
> nor did counsel object to court-performed EXPATRE (sic) competency hearing, no
> cross-examination." Doc. 1 at 4.
>
> Ground Two: Movant was denied his Sixth Amendment right to effective assistance
> of counsel in that his trial counsel verbally abused him at trial and displayed
> unprofessional behavior. Id. at 5.
>
> Ground Three: Movant was denied his Sixth Amendment right to effective assistance
> of counsel in that his trial counsel failed to file a motion to dismiss prior to trial for
> lack of evidence because no physical evidence exists in the case. Id. at 7.
>
> Ground Four: Movant was denied his Sixth Amendment right to effective assistance
> of counsel in that his trial counsel failed to sever the trial.  Id. at 8.

Movant filed a memorandum in support of his Motion to Vacate, in which he listed the following

additional "claims" for relief:  (1) that the trial court erred in failing to sever the trial of movant and

James Kornhardt; (2) the witnesses, evidence and "the situation" qualified as grounds for a "join

trial"; (3) ineffective assistance of counsel for failing to file an interlocutory appeal on the severance

issue; (4) ineffective assistance of counsel for failing to investigate movant's alibi witness; (5)

ineffective assistance of appellate counsel for failing to raise on appeal an ethics violation created

by the government; (6) an attorney withheld vital exculpatory evidence; and (7) that movant

continues to have his case prejudiced by the overwhelming evidence against Mr. Kornhardt.

Memorandum in Law, Doc. 1, Ex. 1 at 2.

On April 14, 2015, movant filed a motion for leave to amend his Motion to Vacate.  Movant

seeks to add claims that there was a  conflict of interest between him and his trial counsel. More

specifically, movant asserts that there was a conflict of interest when his counsel advised him to

"waive" an order by this Court regarding the statute of limitations. Movant also claims that there was a conflict of interest in that his attorney expended "as little effort and expense as possible on [m]ovant's case" and failed to "provide a complete defen[s]e." Doc. 17 at 7.

### III. Legal Standard

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The Supreme Court has stated that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

### IV. Discussion

**A.     Ground One - Ineffective Assistance of Counsel with Regard to Competency Hearing.**

In Ground One movant contends that he received ineffective assistance of counsel that rises to the level of a constitutional violation with regard to his competency hearing. To prevail on an ineffective assistance of trial counsel claim, movant must show that his counsel's performance was deficient and that he was prejudiced by the deficient performance. See McReynolds v. Kemna, 208 F.3d 721, 722 (8th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "Counsel's performance was deficient if it fell outside the wide range of professionally competent assistance." McReynolds, 208 F.3d at 723 (internal quotations and citations omitted). Prejudice is shown if there is a "reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To establish ineffective assistance of counsel under the first prong a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. When evaluating counsel's performance, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Even if there is sufficient proof that the first prong exits, relief is warranted only if a movant also establishes that counsel's deficient performance prejudiced the case. Id. at 697. A court may address the two prongs in either order, and if the movant fails to make a sufficient showing of one prong, the court need not address the other prong. Strickland, 466 U.S. at 697; Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000).

Movant states in his Motion to Vacate that his attorney was ineffective for failing to "order" a competency hearing and for failing to object to a court-performed competency hearing that did not allow for cross-examination. Doc. 1 at 4. More specifically, movant argues:

> Under § 4241 – the Prosecution, on the record stated the requirement for a competency hearing, which counsel agreed was his duty to schedule, but did not. The Prosecution arranged an exam, but held an EXPARTE (sic) hearing on the results, where no cross-examination was held, and [movant] was not present to confront this witness. Under Crawford, since the testimony of this "expert" was used to meet the court requirement under the law, thus convict [movant], this violated [movant]'s right to face and confront this evidence.

Id.

Movant's claim is without merit because he cannot meet the Strickland "performance" prong. On May 24, 2010, prior to trial, movant's counsel filed a motion to determine movant's mental condition. United States v. Mueller, 4:08-CR-701 CAS, Doc. 213. Counsel stated in the motion that

he had reason to believe movant was suffering from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Id. Movant's counsel requested that the Court order a psychiatric or psychological examination. He also requested a competency hearing under Title 18 U.S.C. § 4241(a), and asked this Court to make a determination as to movant's mental condition and ability to stand trial. Id., Doc. 226. On May 27, 2010, the undersigned held a hearing on the motion and found there was reason to believe movant may be suffering from a mental disease or defect rendering him mentally incompetent to stand trial. The Court ordered that a psychiatric or psychological examination take place. Movant was to arrange for the examination, following consultation with the government as to the examiner.

With the trial date fast approaching, the parties arranged for movant to be examined by Jeffrey S. Kline, Ph.D., a licensed psychologist. Movant was tested and examined by Dr. Kline on May 31, 2010. After an examination, Dr. Kline submitted to the Court a thorough Forensic Psychological Report dated June 1, 2010, in which he concluded movant did not suffer from a mental disease or defect rendering him mentally incompetent to strand trial or to properly assist in his own defense

Movant's counsel filed objections to the report and he requested that movant be seen by another examiner. The Court held a competency hearing on June 3, 2010, at which time movant, his counsel, and Dr. Kline were present. Movant's counsel argued that the evaluation was too short, inconsistent, and that another evaluation should be conducted. He also argued that he should be allowed to question Dr. Kline under oath. The Court rejected these arguments and adopted Dr. Kline's report finding movant was competent to stand trial.

In his Motion to Vacate, movant faults his counsel for not "ordering" a competency hearing. An attorney cannot "order" competency hearings. Instead, an attorney can file a motion and request that one be held, which is what movant's counsel did in this case. Movant also faults his attorney for allowing an <u>ex parte</u> competency hearing. This contention is not supported by the record. The Court did not hold an <u>ex parte</u> hearing. The prosecution and movant's counsel were present at the hearing, as was movant and Dr. Kline. Movant further faults his counsel for not cross-examining Dr. Kline during the competency hearing. At the hearing movant's counsel did request that the Court allow him to cross-examine Dr. Kline, but the Court denied the request. Movant's counsel could not have cross-examined Dr. Kline at the competency hearing without the Court's permission. Movant cannot establish his counsel's performance was deficient with regard to the competency hearing.

But even if the Court were to find movant's counsel was somehow ineffective in this regard, movant has not established prejudice. Movant argued on appeal that his due process rights were violated with regard to the competency hearing, and the Eight Circuit rejected this argument. More specifically, the Eighth Circuit wrote:

> Mueller also argues that the trial court violated his due process right by failing to allow him the opportunity to ask questions of the examining psychologist, denying his request for a second opinion, and failing to adequately inquire into his competency.
>
> . . . .
>
> The trial court conducted multiple hearings, ordered a psychological examination, and considered Dr. Kline's rationale and explanations. Based on this record, we find unpersuasive Mueller's argument that the trial court failed to adequately inquire into his competency. We also cannot say that the trial court clearly erred in denying Mueller's request to cross-examine Dr. Kine or for a second opinion. <u>Cf.</u> <u>United States v. Jones</u>, 23 F.3d 1307, 1309 (8th Cir. 1994) (Morris Shepard Arnold, J., plurality) (recognizing that "trial court ha[s] the discretion to hold or to forgo an additional hearing" when "[t]he psychiatric report submitted to the court indicate[s] that [the defendant] was competent to stand trial"); <u>id.</u> at 1316 (Wellford, J.,

concurring in result) ("It is clear in this circuit that once a defendant has been determined to be competent to stand trial, a hearing on competency is not required." (citation omitted)). See also United States v. Lebron, 76 F.3d 29, 32 (1st Cir. 1996) ("If a psychiatrist has determined that a defendant is competent, a court is not required to hold a further evidentiary hearing absent extenuating circumstances."). Moreover, even if the trial court committed a procedural error during the second hearing, we find that the error was harmless because Mueller was competent to stand trial as explained above. See United States v. Huguenin, 950 F.3d 23, 28 (1st Cir. 1991) ("[P]rocedural glitches during the competency determination may be deemed harmless error where there is no reasonable probability that different procedures would have produced a finding of incompetency." (citing United States ex. rel. Lewis v. Lane, 822 F.2d 703, 706 (7th Cir. 1987) (citations omitted).

United States v. Mueller, 661 F.3d at 353-54.

Movant has not established that his counsel was ineffective for failing to "order" a competency hearing and for failing to object to a competency hearing that did not allow for cross-examination. Movant's claim is not supported by the record, and in any event, movant cannot show prejudice. The claim is denied without merit.

### B. Ground Two - Ineffective Assistance of Counsel Based on Verbal Abuse at Trial and Unprofessional Behavior.

Movant argues in Ground Two that he received ineffective assistance of counsel at trial because he was verbally abused by his counsel, who displayed "unprofessional behavior." Doc. 1 at 5. More specifically, movant contends that his trial counsel refer to him as a "moron" and "simpleton" in the presence of the jury. Movant's claim is without merit because he has not shown that his counsel's performance was constitutionally defective or that he suffered prejudice.

At trial, movant's counsel did portray movant as simple and unsophisticated, but this was not done out of malice or disrespect, but rather it was a matter of trial strategy because movant had confessed to the crime. Movant made many statements to law enforcement incriminating himself in the murder of Danny Coleman, which were read to the jury. It is apparent from the evidence that

movant's counsel was trying to convince the jury that movant provided these statements to investigators because he was a simple person with an active imagination, and that movant was taken advantage of by law enforcement. For example, during opening, movant's counsel stated:

> At first I'd like to start by telling you a little bit about Steven Mueller. Steven Mueller is 50 years of age. He has lived with his parents his entire life. Those who know him will describe him as shy, that he is socially awkward. And I certainly don't mean to offend him by saying these things, but it's the evidence in the case. He's socially awkward, shy. He has few friends. He's described by those who know him as easily taken in, that he loves to make up vivid stories, that he shies away from fights, that he is non-confrontational, and that he is the kind of person who seeks to please people.

> Trial Transcript, Vol. II, p. 52.

And during closing, movant's counsel argued:

> So you have to ask yourself, what kind of person does it take to falsely confess to a crime that they did not commit and that the evidence shows that they did not commit? It takes a person like Steven Mueller, someone who has lived with his parents for 50 years, someone who has no contact with law enforcement. It takes a person who whistles, hums, giggles and makes strange noises during a murder interrogation.

> From our common experience, I think we can all agree that it takes a fool. It would take a person who could be easily manipulated and subject to suggestion. And it was obvious to the agents, it had to be. And we know this because Agent Heistzler testified about Mr. Mueller's statement. Of course he had two versions; he had the perfect version on direct where Steven Mueller beat Danny Coleman with two men. Steven Mueller threw the first punch, beat him down in 7808 Michigan, shot him three times. We have that perfect version.

> . . .

> [Movant] is my client, but he is a fool. You have heard everything that there is to hear about his statements. They make no sense. And not to offend him, but this is his life. His statements are moronic. They make no sense. They cannot be relied upon.

> The government rejected, rejected him as a witness in this case. They rejected his story.

Trial Transcript, Vol. II, p. 118.

Movant's counsel did refer to movant as a "fool" and he described movant's statements as "moronic," but this was done as a matter of trial strategy in order to explain movant's confession. Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255 proceedings. Morelos v. United States, 709 F.3d 1246, 1250 (8th Cir. 2013); Loefer v. United States, 604 F.3d 1028, 1030 (8th Cir. 2010); Link v. Luebbers, 469 F.3d 1197, 1204 (8th Cir. 2006). Trial counsel's statements may have been insulting to movant, but the Court finds movant has not established that his counsel's performance was constitutionally deficient.

What is more, movant has not shown prejudice. The evidence against movant was significant and included his own confession. Movant has not explained how the outcome of his trial would have been different had his counsel not described him as a simpleton and fool. Movant's claim is without merit.

### C.     Ground Three - Ineffective Assistance of Counsel for Failing to File Motion to Dismiss Based on No Physical Evidence.

In Ground Three movant also claims he was denied his Sixth Amendment right to effective assistance of trial counsel. Movant argues that his trial counsel was constitutionally defective because he failed to file a motion to dismiss based on the fact that there was no physical evidence implicating movant. Id. at 7. Movant's claim is without merit because he has not shown that his counsel's performance was constitutionally defective or that he suffered prejudice.

As an initial matter, movant's counsel did file several motions to dismiss the indictment. First, movant's counsel filed a motion to dismiss Counts I and II of the superseding indictment for failure to state a claim. United States v. Mueller, 4:08-CR-701 CAS, Doc. 119. He also filed a

motion to dismiss based on the statute of limitations. Id., Doc. 120. And he filed a third motion to dismiss for failure to state an offense with respect to Count I of the superseding indictment. Id., Doc. 121. Movant cannot establish that his counsel's performance was constitutionally infirm for failing to file a motion to dismiss for lack of physical evidence because such a motion would have been denied. There was evidence against movant to support the criminal complaint and subsequent indictment, including telephone recordings and his own confession. Movant has cited no legal authority in support of his argument that there must be "physical evidence" to support an indictment, and the Court has found none. A motion to dismiss for lack of physical evidence would have been denied.

Second, movant cannot establish prejudice because sufficient evidence existed against movant. The jury convicted movant based on the evidence before it, and the Eighth Circuit upheld the conviction, overruling movant's appeal challenging the sufficiency of the evidence. The Eighth Circuit wrote:

> Mueller repeatedly confessed to being involved in Danny's murder. He identified the location of the murder scene, which was in the basement of a house that was previously unknown to the agents. He also told agents about his role in the murder. In the presence of the agents, he reenacted the events leading up to Danny's death inside the house. And he told an agent during an interview that he was paid for his role in the murder.

> After reviewing the record, we find that a jury could conclude that Mueller was guilty of conspiracy to commit murder-for-hire and murder-for-hire beyond a reasonable doubt. Thus, there was sufficient evidence to convict Mueller of the crimes charged against him.

United States v. Mueller, 661 F.3d. at 353-54.

Movant's claim in Ground Three is without merit. Movant's counsel was not constitutionally ineffective for failing to file a motion to dismiss for lack of physical evidence, because any such motion would have been denied.

### D. Ground Four - Ineffective Assistance of Counsel for Failing to Sever the Trial

In Ground Four movant argues that he was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to sever the trial. Doc. 1 at 8. Movant argues that he was not convicted based on the evidence against him, but rather "he was convicted on the strength of the evidence against [his] co-defendant, [James Kornhardt]." Id. This claim is without merit because movant's counsel did attempt to sever the trial. Movant's counsel filed a pretrial motion to sever movant's trial from that of his co-defendant, James Kornhardt. The motion, however, was denied. The fact that the motion was denied does not render counsel's performance deficient. Movant has not explained in his Motion to Vacate what more his counsel could have done to sever the trial. Movant cannot show that his counsel's performance was constitutionally ineffective with regard to his counsel's attempt to sever the trial. Strickland v. Washington, 466 U.S. 668 (1984).

In his memorandum in support of his Motion to Vacate movant raises claims that are related to the issue he raises in Ground Four. Movant argues (1) that this attorney and the Court erred in failing to sever the trial of movant and James Kornhardt; and (2) that his counsel was ineffective for failing to submit an interlocutory appeal with regard severing the trial. Neither of these claims have merit.[2]

_____

[2]Movant also argues in his memorandum in support of his Motion to Vacate that his case continues to be prejudiced by the "overwhelming" evidence against his co-defendant, James Kornhardt. This argument is another variation of the argument that his trial should have been

First, defense attorneys do not have the authority to sever trials. An attorney can request that a court sever a trial, which is what movant's counsel did in this case, but this Court denied the request. Second, movant's counsel raised the argument that the Court erred in failing to sever the trials of movant and Mr. Kornhardt in movant's direct appeal and, therefore, the claim cannot be raised in movant's Motion to Vacate. "[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Davis v. United States, 673 F.3d 849, 852 (8th Cir. 2012). See also Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003); Dall v. United States, 957 F.2d 571, 572 (8th Cir. 1992). Furthermore, the Eighth Circuit found the argument to be without merit. The Eighth Circuit fully considered the issue and concluded that "[b]ecause the murder-for-hire and the conspiracy to commit murder-for-hire charges were identical to both appellants, severance is unnecessary." Mueller, 661 F.3d at 348. As movant has already presented this issue to the Eighth Circuit Court of Appeals, he is procedurally barred from relitigating the claim in this § 2255 proceeding. Furthermore, the claim is without merit as decided by the Eighth Circuit.

Movant's claim that his counsel was ineffective for failing to file an interlocutory appeal on the issue of severing the trial also fails because movant cannot show prejudice. The Eighth Circuit rejected the argument in movant's direct appeal. Therefore, it follows that the argument would have been rejected on an interlocutory appeal. Movant cannot show he suffered prejudice by his counsel's failure to file an interlocutory appeal on the issue of severance. The claim is denied without merit.

---

severed. The claim has been address by the Eighth Circuit, and is without merit. Mueller, 661 F.3d at 348.

**E.      Failure to Investigate Alibi Witnesses**

In his memorandum in support of his Motion to Vacate, movant argues that his trial counsel was ineffective in failing to investigate alibi witnesses. Movant writes:

> [Movant] was at work the day of the murder, had multiple alibi witnesses to that fact, which the Attorney was informed of, but never interviewed. Since he was at work that day, it was thus not possible for him to have participated in the crime charged.

Memorandum in Law, Doc. 1, Ex. 1 at 2.

"To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" Hadley v. Groose, 97 F.3d 1131, 1135 (8th Cir. 1996) (quoting Stewart v. Nix, 31 F.3d 741, 744 (8th Cir.1994)). There can be no showing of prejudice in the habeas context without evidentiary proof as to what the witness's testimony would have been. Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989) (appellant who filed a § 2254 motion but produced no affidavit from the witness in question or any other independent support for his claim failed to show prejudice because he offered only speculation that he was prejudiced by his counsel's failure to interview the witness, which was not enough to undermine confidence in the outcome of the trial, as required by Strickland); United States v. Vazquez-Garcia, 211 F. App'x 544, 546 (8th Cir. 2007) (per curiam) (§ 2255 movant failed to show prejudice where he did not provide any affidavits or other information concerning witnesses' potential testimony, other than his own speculation).

In his Motion to Vacate and supporting memorandum movant does name these potential witnesses are and there is no evidence before the Court that they were available and willing to testify at trial. But most importantly, movant's assertion that these potential witnesses would have

provided him with an alibi is only speculation. Movant offers no evidence, such as affidavits, to support what these witnesses might have said. Movant's allegations are speculative, and he has neither established that counsel was ineffective for failing to call these unnamed witnesses, nor that he was prejudiced as a result.

### F.      Failure to Raise Ethics Violation on Direct Appeal

In his memorandum in support of his Motion to Vacate, movant states that there is an issue as to "[w]hether the attorney failed to raise before the Appeal Court the Ethics Violation the Government caused with Mueller." Memorandum in Law, Doc. 1, Ex. 1 at 2. Movant offers no further explanation or analysis in support of this claim. Most significantly, he does not state what the "ethics violation" was. Mere conclusory allegations without factual and legal support are insufficient to support a claim for ineffective assistance of counsel. Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance); Estes v. United States, 883 F.2d 645, 647 (8th Cir. 1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence). The claim is denied.

### G.      Attorney Withheld Vital Exculpatory Evidence From the Jury

In his memorandum in support of his Motion to Vacate, movant states there is an issue as to "[w]hether the attorney withheld vital exculpatory evidence he had a personal knowledge of from the jury." Memorandum of Law, Doc. 1, Ex. 1 at 2. Again, movant offers no further explanation or analysis in support of this claim. From movant's filing, the Court cannot ascertain to which attorney movant is referring, and what exculpatory evidence was withheld. Without this information, the Court cannot evaluate movant's claim. Movant's allegations are conclusory and

insufficient to establish grounds for relief.  <u>Bryson</u>, 268 F.3d at 562; <u>Estes</u>, 883 F.2d at 647.  The claim is denied.

## V.  Motion for Leave to Amend

On April 14, 2015, movant filed a motion for leave to amend his Motion to Vacate to include additional grounds for relief.  Movant seeks to include a claim that his trial counsel was acting under a conflict of interest when he advised movant to "waive" an order by this Court regarding the statute of limitations.  Movant also claims that there was a conflict of interest in that his attorney expended "as little effort and expense as possible on Movant's case" and failed to "provide a complete defen[s]e." Doc. 17 at 7. The Court will deny movant's motion for leave to amend, because the amendment is untimely and the claims movant seeks to add do not relate back to movant's original claims.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a section 2255 motion must be filed within one year of "the date on which the judgment of conviction becomes final."  <u>See</u> 28 U.S.C. § 2255.  The one-year limit began to run in this case on April 16, 2012, the date on which movant's petition for a writ of certiorari was denied.  <u>See</u> <u>Campa-Fabela v. United States</u>, 339 F.3d 993, 993-94 (8th Cir. 2003) (per curiam), <u>cert. denied</u>, 541 U.S. 967 (2004). Therefore, movant's proposed amendments to his § 2255 motion filed on April 14, 2015, more than one year later, are time barred unless they "relate back" under Rule 15(c) of the Federal Rules of Civil Procedure.

Rule 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out– or attempted to be set out– in the original pleading."  In <u>Mayle</u>

v. Felix, 545 U.S. 644, 664 (2005), the Supreme Court interpreted Rule 15 in the habeas context, and held that in order for the claims in an amended habeas motion under 28 U.S.C. § 2254 to relate back, they must be of the same "time and type" as those in the original motion, such that they arise from the same core set of operative facts. Id. at 657, 664. The Eighth Circuit subsequently applied Mayle's holding in the context of a federal prisoner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. See United States v. Hernandez, 436 F.3d 851, 857 (8th Cir. 2006).

Movant asserts that his conflict-of-interest claims relate back to the second claim he asserted in his initial § 2255 Motion to Vacate – that his trial counsel was ineffective due to verbal abuse at trial. Movant argues that his claim of verbal abuse encompasses his claims of conflict of interest "without using said term." Memorandum of Law, Doc. 1, Ex. 1 at 2. The Court does not agree. It is "not enough" that movant's original claims and his proposed claims allege poor performance or misconduct by counsel. Dodd v. United States, 614 F.3d 512, 515 (8th Cir. 2010). Movant does not satisfy the relation back standard "merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based on an entirely distinct type of attorney misfeasance." United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005). Allegations of ineffective assistance "must be of the same 'time and type' as those in the original motion, such that they arose from the same core set of operative facts." United States v. Hernandez, 436 F.3d, 851, 857 (8th Cir. 2006).

The claims movant seeks to add – that there was a conflict of interest between movant and his attorney because his attorney advised movant to "waive" a ruling regarding the statute of limitations, and because his attorney expended little effort and expense as possible on movant's case – are distinct from movant's original claims. There is nothing in the original Motion to Vacate

regarding the statute of limitations and the Court's adverse ruling on this issue.[3] A claim regarding counsel's advice regarding a ruling on the statute of limitations does not arise from same core of operative facts as counsel's alleged "verbal abuse" at trial. While both claims involve attorney misconduct, they are not the same type and do not arise from the same conduct. As for the claim that movant's counsel was acting under a conflict of interest in that he did not expend enough time and resources to movant's case, this claim is also unrelated to movant's claim of "verbal abuse" a trial. What movant's counsel said at trial versus the resources his counsel expended preparing for trial are unrelated. In order to evaluate the merits of the new claim, the Court would need to delve into completely different facts and conduct that are not before the Court. In other words, movant does not meet the relation-back standard because the proposed claim involves "an entirely distinct type of attorney misfeasance" Ciampi, 419 F.3d at 24.

The Court reviewed the entire record in this case and finds that the two proposed claims movant seeks to add do not arise out of the same core of operative facts as any of the claims in movant's original Motion to Vacate. Maybe, 545 U.S. at 664. The Court denies movant's motion for leave to amend because the proposed claims he asserts therein are untimely, and they do not relate back to the claims in movant's original motion.

## VI. Conclusion

For all the reasons stated above, the Court finds that Steven Mueller is not entitled to relief under 28 U.S.C. § 2255. The Court finds that all the claims in movant's Motion to Vacate have been raised on direct appeal or fail on the merits. Moreover, the claims movant seeks to assert in his motion to amend are untimely and do not relate back the claims in his original Motion to Vacate.

---

[3]What is more, there is nothing in the record that would indicate that movant's counsel advised him to "waive" the Court's adverse ruling on his statute of limitations argument. In fact, movant pursued this argument on appeal. Mueller, 661 F.3d at 344-45.

Accordingly,

**IT IS HEREBY ORDERED** that movant Steven Mueller's motion for evidentiary hearing is **DENIED.** (Doc. 10)

**IT IS FURTHER ORDERED** that movant Steven Mueller's motion for leave to amend is **DENIED.** (Doc. 17)

**IT IS FURTHER ORDERED** that movant Steven Mueller's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody is **DENIED.**

**IT IS FURTHER ORDERED** that movant Steven Mueller has not made a substantial showing of the denial of a constitutional right such that reasonable jurists would find the Court's assessment of the constitutional claims debatable, or that reasonable jurists would find it debatable whether the Court was correct in its procedural rulings and, therefore, this Court will not issue a certificate of appealability on those claims. See Miller-El v. Cockrell, 537 U.S. 332, 338 (2003); Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

An appropriate judgment will accompany this Memorandum and Order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this ___9th___ day of March, 2016.